UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STACCATO 2011, LLC, STACCATO RANCH TEXAS, LLC, and NEVADA PF, LLC, | § § § § | |
| *Claimants,* | § § | No. 1:26-cv-269 |
| v. | § § | |
| ASHLEY SMITH, | § § | |
| *Respondent.* | § § | |

## **CLAIMANTS' PETITION AND APPLICATION TO COMPEL ARBITRATION**

Staccato 2011, LLC ("Staccato 2011"), Staccato Ranch Texas, LLC ("Staccato Ranch"), and Nevada PF, LLC ("Staccato Vegas") (collectively, "Claimants"), pursuant to 9 U.S.C. § 4, file this petition and application to compel Ashley Smith ("Smith") to participate in an arbitration proceeding currently pending before the American Arbitration Association.

## **PARTIES**

1.      Staccato 2011, LLC is a limited liability company organized under the laws of the State of Texas.  None of Staccato 2011's members reside in New York, and therefore, Staccato 2011 is not a citizen of the State of New York.

2.      Staccato Ranch Texas, LLC is a limited liability company organized under the laws of the State of Texas.  None of Staccato Ranch's members reside in New York, and therefore, Staccato Ranch is not a citizen of the State of New York.

3.      Nevada PF, LLC is a limited liability company organized under the laws of the State of Nevada.  None of Staccato Vegas's members reside in New York, and therefore, Staccato Vegas is not a citizen of the State of New York.

4.     Ashley Smith is an individual who resides in New York, and she may be served with process at her home address, 304 Sandra Lane, Syracuse, New York 13212, or wherever she may be found.  Thus, Smith is a citizen of the State of New York.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper in this Court pursuant to 9 U.S.C. § 4 and 28 U.S.C. § 1332, as there is complete diversity of citizenship as between Claimants and Smith and the matters in controversy exceed the sum or value of $75,000.00.

6.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this district because a substantial part of the events or omissions occurred in Williamson County, which is within this judicial district.

## FACTS

7.     On June 6, 2024, Smith signed two separate agreements to be an independent contractor (collectively, the "Independent Contractor Agreements") for one of Claimants.  Smith signed one agreement to be an "Instagram Specialist" with Staccato Ranch, **Exhibit A**, and signed another agreement to be a "Pistol Instructor" with Staccato 2011, **Exhibit B**.

8.     The American Arbitration Association ("AAA") has jurisdiction over the claims Claimants have made in the arbitration against Smith, pursuant to Sections 9 in the independent contractor agreements.  Each of those sections provides that:

Any controversy or claim (except those regarding Inventions, Work Product, Confidential Information or intellectual property) arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof, provided however, that each party will have a right to seek injunctive or other equitable relief in a court of law. The prevailing party will be entitled to receive from the non-prevailing party all costs, damages and expenses, including reasonable attorneys' fees, incurred by the prevailing party in connection with that action or proceeding, whether or not the controversy is reduced to judgment or award. The prevailing party will be that party who may be fairly said by the arbitrator(s) to have prevailed on the major disputed issues. Consultant hereby consents to the arbitration in the State of Texas in the County of Williamson.

**Exhibits A and B**.

9.      On August 12, 2025, Claimants submitted their arbitration demand and statement of claims to the AAA.  Those arbitration claims by Claimants are pending before the AAA under Case No. 01-25-0004-6202.  **Exhibit C**.  The claims pending in the arbitration relate to Smith's failure to perform under the independent contractor agreements, and additional matters that "touch upon" and are "factually intertwined" with matters arising out of and related to the independent contractor agreements.  *E.g., Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067 (5th Cir.1998); *see also, e.g*., *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 900 (Tex.1995) (orig. proceeding); *AutoNation USA Corp. v. Leroy,* 105 S.W.3d 190, 195–96 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).  None of Claimants' claims seek adjudication of any claim for sexual harassment or sexual assault.  **Exhibit C**.

10.     Smith nonetheless requested the arbitrator dismiss the claims initiated by Claimants in the arbitration under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "EFAA").  She did so despite the fact that there is no case pending anywhere raising any sexual harassment or sexual assault claim.  Rather, Smith asked the arbitrator to determine whether the fact that she has filed an EEOC charge against "Staccato"—a copy of which

she provided to the arbitrator—prevents the arbitrator from adjudicating Claimants' claims in the arbitration proceeding.  In abundance of caution, and given the language of the EFAA, the arbitrator has left this issue for a court to decide.  **Exhibit D**, Arbitrator's January 28, 2026 Order. In the meantime the arbitrator has stayed any further adjudication of Claimants' claims.

11.    This petition is filed to seek a court ruling that Smith is required by law and the language of the independent contractor agreements to comply with the provisions compelling arbitration.

## PETITION TO COMPEL ARBITRATION

12.    Claimants incorporate the foregoing paragraphs by reference.

13.    Pursuant to the Independent Contractor Agreements, Claimants are required to pursue their claims, as they are currently doing, in the arbitration.

14.    Under the Federal Arbitration Act (the "FAA"), courts have the power to compel arbitration.  9 U.S.C. § 4.  For a court to compel arbitration under the FAA, the party seeking to compel arbitration must show (1) a valid arbitration agreement exists and (2) the dispute falls within the scope of that agreement.  *E.g., Pennzoil Exploration,* 139 F.3d at 1065 (5th Cir. 1998); *Lifecell Corp. v. Carver*, No. SA-14-CV-152-XR, 2014 WL 12586857, at *1 (W.D. Tex. 2014).

15.    An agreement to arbitrate is valid if it meets the requirements of the general contract law of the state.  When deciding whether the parties agreed to arbitrate the dispute in question, courts generally apply ordinary state-law principles.  *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).

16.    Under Texas law, the elements of a valid agreement are: (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding.  *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

17. Here, there can be no legitimate argument against the fact that the relevant parties agreed to and signed the Independent Contractor Agreements. As such, the Independent Contractor Agreements are valid and enforceable contracts under Texas law, and are deemed enforceable under the FAA. 9 U.S.C. § 2.

18. Further, the claims Claimants seek to pursue fall within the scope of the arbitration provision. Courts must resolve any doubts about an agreement to arbitrate in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (holding that "ambiguities [are] resolved in favor of arbitration").

19. Pursuant to these arbitration provisions, Smith expressly agreed that "any controversy or claim (except those regarding inventions, Work Product, Confidential Information, or intellectual property) arising out of or relating to [the Independent Contractor Agreements], of the breach thereof, should be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." **Exhibits A and B**.

20. Claimants' claims in arbitration arise out of and relate to the Independent Contractor Agreements and Smith's work for Claimants. All of Claimants' claims are rooted in the relationship between Smith and Claimants, Smith's obligations thereunder, and Smith's alleged conduct in connection with the performance, termination, and administration of those agreements. This relationship includes the time period in which Smith was a signatory to the Independent Contractor Agreements, and a controversy exists that concerns the time period in which the those agreements existed. The plain language of the agreements confirms the parties' intent to arbitrate all disputes connected to their contractual relationship, subject only to narrow and inapplicable carve-outs. None of Claimants' claims concern inventions, work product, confidential

information, or intellectual property.  Thus, the disputes between the parties fall within the scope of the arbitration provision.

21.    Furthermore, the EFAA does not apply to Claimants' claims that are pending in the arbitration.  The EFAA invalidates, in specified circumstances, a pre-dispute mandatory arbitration agreement with respect to a "case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402.  The law flatly applies only to cases filed under federal, tribal, or state laws, and even then applies only to claims that require resolution of a "sexual assault dispute or the sexual harassment dispute."  Claimants' affirmative claims pending in the arbitration do not require resolution of any claims by Respondent of sexual harassment, much less assault in a workplace.  Simply put, Claimants are not asserting in this arbitration any claim that would litigate the merits of any claim by Smith of sexual harassment or assault.

22.    Furthermore, Smith has not filed a sexual assault or harassment claim against any of Claimants in any court.  Even if she had, any such claim must assert an *actual* and *viable* sexual harassment cause of action under controlling legal principles to invoke the EFAA.  Otherwise, parties could attempt to avoid binding arbitration agreements through artful pleading and mere words lacking legal substance—an outcome which cannot be squared with policies favoring arbitration.  Because Claimants have not filed a sexual harassment claim, and Smith has not filed a case, much less a case that includes a cognizable sexual harassment claim, the EFAA does not apply here.  "[T]he text of the EFAA does not support the view that at the election of the party making a sexual harassment allegation, a pre-dispute arbitration agreement is unenforceable with respect to all *claims* related to the sexual harassment dispute, regardless of whether the claims are

actually raised in a pending lawsuit." *Owens v. PriceWaterHouseCoopers LLC*, 786 F. Supp. 3d 831, 853 (S.D.N.Y. 2025).

23.    Any EEOC charge filed by Smith is an entirely separate administrative proceeding, and not a pending lawsuit.  Smith's argument about the applicability of the EFAA to Claimants' pending claims is flatly inconsistent with the text and purpose of the EFAA.  In 2022, the EFAA was enacted to amend the FAA to give employees the option to either arbitrate a "sexual harassment dispute" or pursue it in court regardless of any contractual agreements with their employers.  9 U.S.C. § 402(a).  Specifically, the statute provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

24.    *Id*.  A "sexual harassment dispute" is "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  9 U.S.C. § 401(4).

25.    Furthermore, even in situations in which a case alleging a sexual harassment dispute has actually *been* filed, the EFAA does not invalidate arbitration agreements as to cases where a party has simply voiced alleged acts of sexual harassment.  Rather, the EFAA applies to cases in which a claimant plausibly alleges a sexual harassment claim "under applicable Federal . . . law" pursuant to the pleading standards of federal law applicable to such claims.  *See* 9 U.S.C. §§ 401(4), 402(a); *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 577 (S.D.N.Y. 2023).

26.    In *Yost*, the Southern District of New York considered whether the EFAA invalidates a pre-dispute arbitration agreement where a case references acts of sexual harassment, but fails to plead an actionable sexual harassment claim under Title VII.  *Yost*, 657 F. Supp. 3d at

583.  Relying on the text of the EFAA, the district court held that the statute only applies when a plaintiff alleges a plausible sexual harassment claim in accordance with federal pleading standards that is actionable under the standards of applicable law.  *Id.* at 585.

27.    The district court recognized that "[r]ead in isolation, [the statutory] text could support that a plaintiff, merely by describing conduct in the vernacular as 'sexual harassment,' could neutralize an arbitration agreement."  *Id.*  However, a careful review of the statutory text—specifically, the statute's use of "alleged" and "under applicable Federal, Tribal, or State law" in the definition of "sexual harassment dispute"—compelled a different conclusion.  The district court arrived at its holding through four points.  First, "Rule 12(b)(6) is longstanding" and "it would have been well-known to Congress that federal courts use the plausibility standard to measure viable claims."  *Id.*  Second, "requiring a sexual harassment claim to be capable of surviving dismissal at the threshold of a litigation fully vindicates the purposes of the EFAA."  *Id.* at 586.  As long as a claim of sexual harassment pends in a case, the EFAA, by its statutory terms, prohibits arbitration.  But if the sexual harassment claim fails to meet the plausibility standard, that purpose is not served by requiring any remaining claims to be litigated in court over a binding arbitration agreement.  *Id.*  Third, requiring such extraneous claims to be resolved in court despite an implausible sexual harassment claim affronts the liberal federal policy favoring arbitration.  *Id.*  Lastly, courts in other contexts have construed the statutory term "allege" in accordance with the court's analysis.  *Id.* at 887 (collecting authority holding the use of "allege" to statutorily incorporate federal pleading standards).

28.    Since *Yost*, various district courts addressing this issue have used the plausibility standard in evaluating whether the EFAA applies.  *See, e.g., Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 254 (S.D.N.Y. 2024); *Clay v. FGO Logistics, Inc.*, 751 F. Supp. 3d 3, 20 (D. Conn. 2024)

("the EFAA applies to only *plausibly* pled sexual harassment disputes"); *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 551–52 (S.D.N.Y. 2023) (companion case to *Yost*); *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 180-82 (S.D.N.Y. 2023); *Mangum v. Ross Dress for Less, Inc.*, No. 5:24-CV-592-D, 2025 WL 1088366, at \*5 (E.D.N.C. Apr. 7, 2025) ("This court agrees with the district court's conclusion in *Yost*."); *Halle Van De Hey v. EPAM Systems Inc.*, No. 24-CV-8800, 2025 WL 829604, at \*3 (N.D. Cal. Feb. 28, 2025); *Bruce v. Adams & Reese, LLP*, No. 3:24-CV-00875, 2025 WL 611071, at \*1 (M.D. Tenn. Feb. 25, 2025) *Arouh v. GAN Ltd.*, No. 23-CV-2001, 2024 WL 3469032, at \*6 (C.D. Cal. Mar. 22, 2024); *Williams v. Mastronardi Produce, Ltd.*, No. 23-13302, 2024 WL 3908718, at \*7 (E.D. Mich. Aug. 22, 2024); *Baldwin v. TMPL Lexington LLC*, No. 23-CV-9899, 2024 WL 3862150, at \*6 (S.D.N.Y. Aug. 19, 2024); *Mitchell v. Raymond James & Associates, Inc.*, No. 8:23-CV-2341-VMC-TGW, 2024 WL 4263151, at \*2 (M.D. Fla. Sept. 23, 2024); *Holliday v. Wells Fargo Bank, N.A.*, No. 423CV00418SHLHCA, 2024 WL 194199, at \*5 (S.D. Iowa Jan. 10, 2024) ("To trigger the EFAA, Holliday would have to raise a plausible claim for sexual harassment."); *see also Delirium TV, LLC v. Dang*, No. 01-23-00383-CV, 2024 WL 1513878, at \*6 (Tex. App.—Houston [1st Dist.] Apr. 9, 2024, pet. filed) (acknowledging significance of *Yost*'s interpretation of "alleged" in considering interpretation of "sexual assault dispute" under EFAA).

29.     However, in this matter, there is no case pending in which any sexual harassment claim, much less any sexual assault claim, within the meaning of the EFAA has been filed in court by anyone.  Accordingly, the Court can and should exercise its powers to summarily require participation by Smith in the pending arbitration initiated by Claimants.  "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to

comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

## PRAYER

WHEREFORE, Claimants requests that Smith be cited to appear and to answer, and that with five days' notice to Smith, 9 U.S.C. § 4, the Court hear the petition to compel arbitration and following that hearing enter enter orders and a judgment:

a. Compelling arbitration;

b. Awarding reasonable and necessary attorneys' fees and costs to Claimants;

c. Post-judgment interest on such an award at the highest rates permitted by law;

d. Recoverable costs of court; and

e. Such other and further relief, both at law and in equity, to which the Claimants may show themselves to be justly entitled.

Respectfully submitted,

**BUTLER SNOW LLP**

By: _/s/ Eric J.R. Nichols_____
     Eric J.R. Nichols
     State Bar No. 14994900
     Eric.Nichols@butlersnow.com
     Roshni Mahendru
     State Bar No. 24138224
     Roshni.Mahendru@butlersnow.com
     1400 Lavaca Street, Suite 1000
     Austin, TX 78701
     Tel: (737) 802-1800
     Fax: (737) 802-1801

     David R. Schlottman
     dschlottman@jw.com
     State Bar No. 24083807
     Lauren M. Vogel
     lvogel@jw.com

State Bar No. 24114574
**Jackson Walker LLP**
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Tel: (214) 953-6000
Fax: (214) 953-5822

**ATTORNEYS FOR CLAIMANTS,
STACCATO 2011, LLC,
STACCATO RANCH TEXAS, LLC, AND
NEVADA PF, LLC**