# EXHIBIT B

## Staccato 2011, LLC & Staccato Ranch Texas, LLC

## Contractor Offer Letter Agreement

**Date:** 6/3/2024
**Contractor Name:** Ashley Smith
**Contractor Address:**

**Company Name:** Staccato 2011, LLC
**Company Address:** 1223 CR 233 Florence, Texas 76527

**Company Name:** Staccato Ranch Texas, LLC
**Company Address:** 1223 CR 233 Florence, Texas 76527

This Consulting Agreement, dated as of June 3, 2024 (the "Effective Date"), is by and between Ashley Smith, a resident of the State of New York ("Consultant"), Staccato 2011 LLC and Staccato Ranch Texas, LLC, a Texas Limited Liability Company ("Company").

**Consultant and Company agree as follows:**

1. **Services; Payment; No Violation of Rights or Obligations.**
Consultant agrees to undertake and complete the Services described on **Exhibit A** (the "Services") in accordance with and on the schedule specified in **Exhibit A** (the "Term"). As the only consideration due Consultant regarding the subject matter of this Agreement, including but not limited to, the provision of the Services described herein and the covenants contained in Paragraph 2(d) herein, Company will pay Consultant the consulting fees described on Exhibit A (the "Fees"). Consultant agrees that it will not, and will not permit others to, violate any agreement with or rights of any third party or, except as expressly authorized by Company in writing, use or disclose at any time Consultant's own or any third party's confidential information or intellectual to or for the benefit of Company.

2. **Ownership; Rights; Proprietary Information; Publicity.**
   a. Company shall own all right, title, and interest, including patent rights, copyrights, trade secret rights, mask work rights, trademark rights, *sui generis* database rights and all other intellectual property rights of any sort throughout the world, in and to any and all inventions (whether or not patentable), works of authorship, mask works, designations, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by or for or on behalf of Consultant during the Term that relate to the subject matter of, or arise out of or in connection with, the Services or any Confidential Information (as defined below) (collectively, "Inventions"). Consultant will promptly disclose and provide all Inventions to Company.

   b. Consultant acknowledges and agrees that all right, title and interest in any "work", as that term is defined in 17 U.S.C. Section 101 et. Seq., that Consultant produces during the performance of the Services pursuant to this Agreement, including written information in the form of memoranda, reports, studies, plans and analyses and falling within the meaning of 17 U.S.C. Section 101 et. Seq., whether preliminary or final, and all copies in which such work is embodied ("Work Product") shall be owned by Company and considered "Work Made for Hire" within the meaning of 17 U.S.C. Section 101 et. seq. To the extent any portion of the Work Product does not constitute a "Work Made for Hire" within the meaning of 17 U.S.C. Section

101 et. seq., Consultant hereby transfers and assigns to Company, its successors and assigns, for good and valuable consideration the receipt of which Consultant acknowledges, all worldwide rights, title, and interest in such portions of the Work Product. Further, Consultant agrees, either during the Term or thereafter, to execute and deliver, from time to time, such documents as may be necessary or convenient to effectuate the assignment and transfer of any Work Product and shall cooperate with and assist Company in every proper way (at the expense of Company) in obtaining and from time to time enforcing Company's rights in the Work Product. Consultant hereby irrevocably designates and appoints Company as its agent and attorney-in-fact, coupled with an interest, to act for and on Consultant's behalf to execute and file any document and to do all other lawfully permitted acts to further the foregoing with the same legal force and effect as if executed by Consultant.

c.  Consultant agrees that all Inventions and all other business, technical and financial information, including the identity of, and information relating to, customers or employees, developed, learned or obtained by or for or on behalf of Consultant during the Term that relate to Company or the business or demonstrably anticipated business of Company or its affiliates or in connection with the Services, or that are received by or for Company in confidence, constitute "Confidential Information". Consultant shall hold in confidence and not disclose or, except in performing the Services, use any Confidential Information. Confidential Information shall not include information that Consultant can document is publicly available without restriction through no fault of Consultant. Upon termination or as otherwise requested by Company, Consultant will promptly provide to Company all items and copies containing or embodying Confidential Information, except that Consultant may keep personal copies of payment and billing records and this Agreement. Consultant also recognizes and agrees that Consultant has no expectation of privacy with respect to Company's telecommunications, networking or information processing systems, including stored computer files, email and voice messages, and that Consultant's activity, and any files or messages, on or using any of those systems may be monitored at any time without notice.

d.  Consultant agrees that during the Term and for twelve months thereafter (i) Consultant will not directly or indirectly encourage or solicit any employee or consultant of Company to leave Company for any reason and (ii) Consultant will not engage in any activity with a business located in Central Texas that is in any way competitive with the business or demonstrably anticipated business of Company, and (iii) Consultant will not assist any other person or organization located in Central Texas in competing or in preparing to compete with any business or demonstrably anticipated business of Company. Without limiting the foregoing, Consultant may perform services for other persons during and after the Term of this Agreement, provided that such services do not represent a conflict of interest or a breach of Consultant's obligation under this Agreement.

e.  To the extent allowed by law, any right, title or license granted Company hereunder includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as or referred to as "moral rights," "artist's rights," "droit moral," or the like. Furthermore, Consultant agrees that notwithstanding any rights of publicity, privacy or otherwise, whether or not statutory, anywhere in the world, and without any further compensation, Company may and is hereby authorized to, and to allow others to, use Consultant's name in connection with promotion of its business, products or services. To the extent any of the foregoing is ineffective under applicable law, Consultant hereby provides any and all ratifications and consents

2

necessary to accomplish the purposes of the foregoing to the extent possible. Consultant will confirm any such ratifications and consents from time to time as requested by Company. If any other person is in any way involved in any Services, Consultant will obtain the foregoing ratifications, consents and authorizations from such person for Company's exclusive benefit.

f.  If any part of the Services or Inventions or information provided hereunder is based on, incorporates, or is an improvement or derivative of, or cannot be reasonably and fully made, used, reproduced, distributed and otherwise exploited without using or violating technology or intellectual property rights owned by or licensed to Consultant or any person involved in the Services and not assigned hereunder, Consultant hereby grants Company and its successors a perpetual, irrevocable, worldwide royalty-free, non-exclusive, transferable, sublicensable right and license to exploit and exercise all such technology and intellectual property rights in support of Company's exercise or exploitation of the Services, Inventions, Work Product, other work or information performed or provided hereunder, or any assigned rights, including any modifications, improvements and derivatives of any of them.

3.  **Warranties and Other Obligations.**
Consultant represents, warrants and covenants that: (a) the Services will be performed in a professional and workmanlike manner and that none of such Services nor any part of this Agreement is or will be inconsistent with any obligation Consultant may have to others; (b) all work under this Agreement shall be Consultant's original work and none of the Services, Work Product or Inventions nor any development, use, production, distribution or exploitation thereof will infringe, misappropriate or violate any intellectual property or other right of any person or entity; (c) Consultant has the full right to provide Company with the assignments and rights provided for herein and has written enforceable agreements with all persons necessary to give the rights to do the foregoing and otherwise fully perform this Agreement; (d) Consultant shall comply with all applicable laws and Company safety rules in the course of performing the Services; and (e) if Consultant's work requires a license, Consultant has obtained that license and the license is in full force and effect.

4.  **Termination.**
Both Company and Consultant may terminate the Agreement early as desired, upon providing 2 weeks advance written notice to the other party.  Such termination shall be effective after 2 weeks of notice of early termination. Upon an early termination, Consultant shall receive a pro-rated payment for services actually rendered, to the Company's reasonable satisfaction, up to the termination date. Sections 2 through 10 of this Agreement and any remedies for breach of this Agreement shall survive any termination or expiration. Company may communicate the surviving obligations contained in this Agreement to any other or potential client or employer of Consultant.

5.  **Relationship of the Parties; Independent Contractor; No Employee Benefits.**
Notwithstanding any provision hereof, Consultant is an independent contractor and is not an employee, agent, partner or joint venturer of Company and shall not bind nor attempt to bind Company to any obligation. Consultant shall accept any directions issued by Company pertaining to the goals to be attained and the results to be achieved by Consultant, but Consultant shall be solely responsible for the manner and hours in which the Services are performed under this Agreement. Consultant shall not be eligible to participate in any of Company's employee benefit plans, fringe benefit programs, group insurance arrangements or similar programs. Company shall not provide workers' compensation, disability insurance, Social Security or unemployment compensation coverage or any other statutory benefit to Consultant. Consultant shall comply at Consultant's

expense with all applicable provisions of workers' compensation laws, unemployment compensation laws, federal Social Security law, the Fair Labor Standards Act, federal, state and local income tax laws, and all other applicable federal, state and local laws, regulations and codes relating to terms and conditions of employment required to be fulfilled by employers or independent contractors. Consultant will ensure that its employees, contractors and others involved in the Services, if any, are bound in writing to the foregoing, and to all of Consultant's obligations under any provision of this Agreement, for Company's benefit and Consultant will be responsible for any noncompliance by them. Consultant agrees to indemnify Company from any and all claims, damages, liability, settlement, attorneys' fees and expenses, as incurred, on account of the foregoing or any breach of this Agreement or any other action or inaction by or for or on behalf of Consultant.

Consultant shall determine the manner, means and method of completing the Services (outlined in Exhibit A below), and Company reserves no control over the specific day-to-day Services rendered by Consultant. Consultant has the ability to set Consultant's own hours when Services will be performed. Further, Company enters into this Agreement with the expectation that Consultant has the requisite market understanding, training, and experience, and Company will not provide any education or training to Consultant on connection with the performance of Services.

## 6.  **Assignment.**

This Agreement and the Services are personal to Consultant and Consultant shall have no right or ability to assign, transfer or subcontract any rights or obligations under this Agreement. Any attempt to do so shall be void. Company may freely assign and transfer this Agreement in whole or part.

## 7.  **Notices.**

All notices under this Agreement shall be in writing and delivered in person, by overnight courier or confirmed email, in each case at the address set forth on the signature page or to such other address as such party last provided to the other by written notice. Notices will be deemed delivered upon receipt.

## 8.  **Indemnification.**

Consultant agrees to indemnify and hold harmless Company and its affiliates, and their respective directors, officers and employees from and against all taxes, losses, damages, liabilities, costs and expenses, including attorneys' fees and other legal expenses, arising directly or indirectly from or in connection with (a) any negligent, reckless, intentionally wrongful, or otherwise unlawful act of Consultant or Consultant's subcontractors, assistants, employees or agents, (b) a determination by a court or agency that Consultant is not an independent contractor, but only if Consultant initiated or joined in support of such court or agency action (c) any breach by Consultant or Consultant's assistants, employees or agents of any of the covenants contained in this Agreement, (d) any failure of Consultant, or Consultant's subcontractors, assistants, employees or agents,  to perform the Services in accordance with all applicable laws, rules and regulations, or (e) any violation of a third party's rights resulting in whole or in part from Company's use of the work product of Consultant under this Agreement. Consultant also agrees to provide workers' compensation insurance for Consultant's employees and agents and agrees to defend, hold harmless and indemnify Company for any and all claims arising out of any injury, disability, or death of any of Consultant's employees or agents.

## 9.  **Arbitration.**

Any controversy or claim (except those regarding Inventions, Work Product, Confidential Information or intellectual property) arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof, provided however, that each party will have a right to seek injunctive or other equitable relief in a court of law. The prevailing party will be entitled to receive from the non-prevailing party all costs, damages and expenses, including reasonable attorneys' fees, incurred by the prevailing party in connection with that action or proceeding, whether or not the controversy is reduced to judgment or award. The prevailing party will be that party who may be fairly said by the arbitrator(s) to have prevailed on the major disputed issues. Consultant hereby consents to the arbitration in the State of Texas in the County of Williamson.

NOTICE: This Agreement does not affect any immunity under 18 USC Sections 1833(b) (1) or (2), which read as follows (note that for purposes of this statute only, individuals performing work as contractors or consultants are considered to be employees):

(1) An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(2) An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

## 10. **Assignments; Use of Employees or Subcontractors**.

Consultant may not assign this Agreement or any duties or obligations under this Agreement without Company's express written consent. Any such assignment will be considered null and void. Company requires such consent to protect intellectual property rights and Client confidentialities. Consultant agrees to require any third-parties working on behalf of Consultant to sign intellectual property and confidentiality agreements prior to and as a condition of their employment or engagement. Company is authorized to assign any of its rights with or without the consent of Consultant.

## 11. **Miscellaneous.**

Any breach of Section 2 or 3 will cause irreparable harm to Company for which damages would not be an adequate remedy, and therefore, Company will be entitled to injunctive relief with respect thereto in addition to any other remedies. The failure of either party to enforce its rights under this Agreement at any time for any period shall not be construed as a waiver of such rights. No changes, additions, modifications or waivers to this Agreement will be effective unless in writing and signed by both parties. In the event that any provision of this Agreement shall be determined to be illegal or unenforceable, that provision will be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas without regard to the conflicts of laws provisions thereof. In any action or proceeding to enforce rights under this Agreement, the prevailing party will be entitled to recover costs and attorneys' fees. Headings herein are for convenience of reference only and shall in no way affect interpretation of the Agreement. This

Agreement and Exhibit A represent the entire understanding and agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements between the parties with respect to the subject matter hereof.

Consultant is responsible for payment of Consultant's taxes and insurance. Consultant is responsible for hiring any subcontractors, assistants, agents, or employees to assist Consultant to provide the Services described herein. All such subcontractors, assistants, agents, and employees shall be hired or engaged at Consultant's expense and all labor performed by any such person(s) shall be under the sole direction and control of Consultant. Consultant will determine the method, details, and means of performing the Services. Consultant may perform the services under this Agreement at any suitable time and location as Consultant chooses. Consultant will use their own resources such as supplies, equipment, tools, and materials to complete the Services. Consultant shall devote such working time and attention to the performance of the services as required to satisfy all duties and responsibilities of Consultant in finishing the assignment.

Consultant shall perform their obligations hereunder in compliance with the terms of this Agreement and any and all applicable laws and regulations. If necessity requires Consultant to perform any services on Company's property or requires Consultant to interact with any of Client's employees, customers, vendors, affiliates or members of the general public, Consultant shall comply with all of Company's policies and regulations to the greatest extent permitted by Texas law governing independent contractor agreements.

12. **Consultant Representations.** Consultant warrants that Consultant is legally capable of entering this Agreement and that there are no other existing agreements or instruments that would impair Consultant's ability to perform the services described in this Agreement. Consultant also warrants that any statements about Consultant's abilities or qualifications to competently complete the described services are accurate and made in good faith. Consultant warrants that all work completed will be Consultant's original work and will not in any way legally infringe upon the rights of others.

13. **Return of Materials**. Upon expiration or termination of this Agreement, successful completion of the services to be provided under this Agreement, or as otherwise requested by Company, Consultant will deliver to Company any Company documents, items, and materials and will provide Company with a signed, written certification that all such documents, items, and materials in the possession of Consultant (and any of Consultant's employees, agents, assistants and/or subcontractors) have been returned.

14. **Expiration of Agreement.** Unless otherwise terminated as provided in this Agreement, this Agreement will continue in effect until the Services provided for in this Agreement have been fully and completely performed to the satisfaction of Company or until such time as Company provides notice of termination.

15. **Entire Agreement; Modifications.** This Agreement, together with any exhibits, schedules, or other documents referenced herein, supersedes any and all agreements, either oral or written, between the parties with respect to the rendering of services by Consultant for Company and contains all of the representations, warranties, covenants, and agreements between the parties with respect to the rendering of those services. Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, have been made

by any party, or anyone acting on behalf of any party, which are not contained in this Agreement, and that no other agreement, statement, or promise not contained in this Agreement will be valid or binding. Any modification of this Agreement will be effective only if it is in a writing signed by an authorized representative of the party to be charged.

16. **Partial Invalidity; Severability; Modification.** If any provision, term, covenant or obligation of this Agreement, or its application, is held invalid, unenforceable, or unlawful, such invalidity, unenforceability or unlawfulness, shall not affect the other provisions, terms, covenants or obligations of this Agreement, or their application, which all shall remain valid and enforceable in full force and effect to the extent permitted by law. Further, if a court or other adjudicative body finds any covenant of this Agreement to be unenforceable with respect to a jurisdiction, the parties agree that the court shall amend such obligations for the protection of Company's business to the minimum extent necessary to render the provision enforceable and that the Agreement shall be enforced within such jurisdiction as so amended.

17. **Attorney's Fees.** If either party incurs any legal fees associated with the enforcement of this Agreement or any rights under this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and any court, arbitration, mediation, or other litigation expenses from the other party.

**18. Good Faith and Fair Dealing.** This Agreement imposes a duty on Consultant to use Consultant's best and reasonable efforts to complete the Services described herein and to perform the duties, terms, and covenants of this Agreement.  Consultant specifically understands and agrees this Agreement imposes a duty of candor, loyalty, and good faith and fair dealing on Consultant.

**19. Waiver:** Rights Cumulative. No waiver of any term or right in this Agreement shall be effective unless in writing, signed by an authorized representative of the waiving party. The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Agreement thereafter. The rights and remedies of the parties herein provided shall be cumulative and not exclusive of any rights or remedies provided by law or equity.

**20. Counterparts.** This Agreement may be executed by email and in one or more counterparts, each of which will be deemed to be an original, but all of which together will constitute one and the same instrument, without necessity of production of the others

**EXHIBIT A**

      This EXHIBIT A is attached to and incorporated into that certain Consulting Agreement, dated June 3, 2024, by and between Ashley Smith, Staccato 2011, LLC, and Staccato Ranch Texas, LLC, a Texas Limited Liability Company (the "Agreement"). Capitalized terms not otherwise defined shall have the meaning set forth in the Agreement. In the event of a conflict between the terms of this Exhibit and the Agreement, the terms of the Agreement will control.


**INSTRUCTOR**

Dear Ashley,

We are pleased to offer you the position of Instructor. In this position you will report to the VP Training for Staccato Ranch. As an officer and a social media influencer, we believe you have strong alignment with our mission and values, and you have the experience to make an immediate impact for the Staccato brand and Staccato Ranch members and guests. While we have discussed the position, we have highlighted specifics related to our company and mission, as well as responsibilities and goals of your role.

**THE COMPANY**
Built for Heroes and based in Florence, Texas, Staccato is on a mission to proudly serve those who protect and embody American freedoms. As the inventors of the 2011® platform—the World's Best Shooting Pistols—Staccato manufactures its handguns and ammunition in America at their headquarters in Florence, TX. The Staccato 2011 has been approved for on- or off-duty carry by over 1,600 U.S. law enforcement agencies in just five years, including elite teams such as U.S. Marshals Special Operations Group, the Texas Rangers and Miami Dade Special Response Team. With a spirit of American ingenuity and commitment to its family of owners, Staccato guarantees its guns for life, and guarantees supply of its 9mm ammunition to subscribers of its ammo service. Staccato Ranch serves as the place where Staccato unites its family of patriots to celebrate freedom and elevate heroes every day.

Staccato was ranked one of the Fastest Growing Private Companies in the Southwest by Inc. Over 25% of our team members are veterans and 100% are patriots. We strive relentlessly to achieve our best every day and are focused on continuous improvement and progress in everything we do.

**THE MISSION**
We protect freedom. We proudly serve those who protect and embody American freedoms.

**RESPONSIBILITIES: INSTRUCTOR**
You will serve as a world-class pistol Instructor for Staccato Ranch. Building on the trust and credibility Staccato has earned with its growing and loyal customer base, you will support our Staccato family members with the best pistol training, using Staccato Ranch's training curriculum as the curriculum gets more defined. As a Staccato team member, you will display entrepreneurialism and energy, reflect our core values, and share the shootability of our pistols, the insane accuracy of our ammunition, and the uniqueness of our Staccato Ranch experiences both through your instruction and your personal social media.

**Key responsibilities include**:
1) **World-Class Training:** Assist in providing world-class pistol training to members and guests of the Staccato Ranch, so our family of Staccato owners build courage, confidence, and proficiency. Minimum 48 days of training for Staccato Ranch annually or an average of four per month
2) **Women's Training:** Assist in instruction of women's classes using Staccato Ranch's training curriculum for women (which count towards the 48 days of training at Staccato Ranch
3) **Membership Conversion:** Convert students and guests who are not members into members
4) **Ammo Subscription Conversion:** Convert students and guests who are not Staccato Ammo subscribers into subscribers
5) **Virtual/Video Training:** Collaborate with the Marketing and Staccato Ranch teams to plan and create training videos that can be used both for publication broadly (e.g. social media, website, email), as well as privately only to Staccato Ranch and 368 members as a value add to their membership. Minimum of 2 training videos per month

**COMPENSATION**
Your contract compensation will be $5,000 per month covering the responsibilities listed above. Any additional days worked for Staccato Ranch Training must be approved in advance and will be paid as follows:
- $500 per additional day of instruction
- $250 per additional day of travel

**Signatures**
**Contractor:**

Signature: _____
Ashley Smith (Jun 6, 2024 09:16 EDT)

Name:    Ashley Smith

Date:    Jun 6, 2024

**Company Representative:**

Signature: _____
(Jun 6, 2024 09:16 CDT)

Name:    Mike Benbow

Date:    Jun 6, 2024

9

# 20240603_Ashley Smith_Contract Offer_Instructor

Final Audit Report                                         2024-06-06

| | |
|---|---|
| Created: | 2024-06-03 |
| By: | David Fossas (david.fossas@staccato2011.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAASIsx3xpHlNKZ5lu0ZHqGMuc0RyvFxtnc |

# "20240603_Ashley Smith_Contract Offer_Instructor" History

Document created by David Fossas (david.fossas@staccato2011.com)
2024-06-03 - 11:40:38 AM GMT

Document emailed to officerashleysmith@yahoo.com for signature
2024-06-03 - 11:41:46 AM GMT

Email viewed by officerashleysmith@yahoo.com
2024-06-03 - 8:09:56 PM GMT

Signer officerashleysmith@yahoo.com entered name at signing as Ashley Smith
2024-06-06 - 1:16:05 PM GMT

Document e-signed by Ashley Smith (officerashleysmith@yahoo.com)
Signature Date: 2024-06-06 - 1:16:07 PM GMT - Time Source: server

Document emailed to mike.benbow@staccato2011.com for signature
2024-06-06 - 1:16:08 PM GMT

Email viewed by mike.benbow@staccato2011.com
2024-06-06 - 2:15:31 PM GMT

Signer mike.benbow@staccato2011.com entered name at signing as Mike Benbow
2024-06-06 - 2:16:32 PM GMT

Document e-signed by Mike Benbow (mike.benbow@staccato2011.com)
Signature Date: 2024-06-06 - 2:16:34 PM GMT - Time Source: server

Agreement completed.
2024-06-06 - 2:16:34 PM GMT

**Adobe Acrobat Sign**